Argument case on the right calendar which is Providence Health v. McDowell Good morning. May it please the Court, my hope is to reserve three minutes for rebuttal. These consolidated cases present a question of first impression. Does ERISA completely divest insurers of any judicial remedy in state or federal court for an ERISA plan participant's admitted breach of contract? In McDowell 1, the district court decided a question that was left open last term by the United States Supreme Court in the Great West v. Knutson decision. The district court held that plaintiff's state law claim commenced in state court seeking money damages for breach of contract was completely preempted by ERISA. The magistrate judge in his own words said that either Providence has a remedy under ERISA or Providence has no remedy at all. In McDowell 2, the district court held that even though plaintiff's remedy at law was completely wiped out by ERISA, by preemption under ERISA, plaintiff was precluded from invoking ERISA's equitable relief provisions to seek specific performance. A classic equitable remedy that is designed to cure a breach of contract when the legal remedy is inadequate. Taken together, these cases achieve a result that is not dictated by the provisions of ERISA and is, in fact, at odds with the fundamental purposes of that act, and neither is the result here compelled or even vaguely suggested by any decision of the Supreme Court or by this Court. Counsel, I wanted to ask you about a pending Supreme Court matter and get your thoughts on whether it's likely enough to make a difference that we should wait for that decision. One month ago, the Supreme Court accepted review in Aetna Health v. Davila and Cigna Health Care v. Calad from the Fifth Circuit. And the question, as I understand it, is whether – it's slightly different, but it's whether ERISA preempts claims brought under a malpractice statute and whether ERISA preempts breach of contract claims. And I don't know if you're familiar with that or not. Your Honor, I apologize. I'm not familiar. I haven't looked at the briefs in that case. I was only aware that they had taken an ERISA case. I don't think it's going to have an impact on this case because it involves a claim brought by a plan participant, as I understand it, and the rights of plan participants are covered under a separate section of ERISA. So I think that is my recollection as well of the facts in those cases. But I guess what I've been trying to sort out in my own mind is whether the Supreme Court is likely to say something that would translate to this situation or at least give us some additional hints. And that could well be. I long ago gave up attempting to predict what the Supreme Court might have to say on any given issue. And I suspect that what we will discover is that there may be something in that opinion in the way that the Court analyzes it that sheds some light on the issues that are presented here. I have an initial question that I'm totally confused in a way. I call them McDowell I and McDowell II. So McDowell I, you filed in Linn County Circuit Court seeking relief for breach contract. It was removed and it was asserted a preemption. It was asserted the district court agreed and dismissed. Now that's on appeal because we have consolidated actions, right? That's correct, Your Honor. Then after that dismissal, the district court in the action on the rescission related, it doesn't fall within the enforcement provision, right? It wasn't a rescission action. It was a suit for specific performance. For specific performance. Excuse me. Yes. Now let's go back to step one. If you would have prevailed in step one, we wouldn't have to worry about step two. Yes. And in fact, I believe that's the correct result in this case. I think McDowell I should be reversed and remanded. I have McDowell II for a second. And let's talk about the first action, McDowell I. If, in fact, all it was was a breach of contract action between the plan and the people that held the policy, not about the plan itself, and if we find that the district court was wrong in dismissing that, then we could reverse that and that's the end of the case, right? Yes. And as I said. What happens when we reverse it? All we're doing is reversing a, what, 12B6 was it or 12B1? Well, there were two decisions that the court made. The court first denied the motion to remand. And that's not reviewable. Well, that's correct, except that if you conclude that the trial court, the only basis for subject matter jurisdiction in this case is if the court concludes that there is complete preemption. Exactly. So if we reverse and it goes back, there's no jurisdiction. So then you would refile in the State court or would it be remanded automatically to the State court? I believe that this court should direct the district court to grant the motion to remand because the court would, under that set of circumstances, would lack subject matter jurisdiction. Correct.  You solved my procedural issue. It's admittedly a procedural quagmire, but I believe that's the correct disposition in this case. McDowell 2 only becomes relevant if you, as the district court did, conclude that Providence is left with no legal remedy at all. And then tell me why we should reverse the district court in McDowell 1. Well, there are three things, three reasons that any one of which would lead to a reversal. We win if our breach of contract claim does not relate to the plan, which is a term of art. And because if the claim doesn't relate to the plan, then it isn't within the field that is preempted. We win if our breach of contract claim is authorized by a State law regulating insurance because even though there is a preemption, there is a savings clause for laws regulating insurance. And finally, we win if our breach of contract claim is not within the scope of the remedy provisions of the ERISA statute. If our claim is not within the scope of the remedy provisions of ERISA, then according to this Court's prior decision, the district court had no subject matter jurisdiction and the motion to remand should have been granted for that reason. What's your best position and your best legal authority on those three? I'd like to start with the third point, which is that the plaintiff's claim is not within the scope of the remedies provided by ERISA, not necessarily because it's my best, but it's the easiest point to understand. It really boils down to a legal syllogism. Our argument is in Tomajian v. Fraley, this Court held that a State law claim is not removable even though it may relate to an ERISA plan, quote, unless it is also encompassed within ERISA's civil enforcement scheme. In Great West, last term, the United States Supreme Court held that a claim such as plaintiff's brought by an insurer against a planned member for damages for breach of contract is not encompassed within ERISA's civil enforcement scheme. Ergo, there's no subject matter jurisdiction. Now, the district court and the McDowell's here say, well, it is within the scope of the civil enforcement scheme. It's just that the civil enforcement scheme doesn't give you a remedy. But that's not what Great West says. Great West says that a reimbursement claim is a claim at law, and ERISA only allows fiduciaries such as Providence to bring claims in equity. A claim at law is not encompassed within ERISA's remedial scheme. That kills the second action, doesn't it? It does kill the second action. And, you know, it's debatable whether – I guess it's not debatable here, but it could be argued that the minority in Great West got it right, and all of these cases should be in federal court. But under Great West, clearly that is not the direction that the Supreme Court was giving. They specifically left open the question of whether we have a legal remedy in state court. Now, the McDowell's also say with regard to this point that really the provider, Providence, in this case, is in no different position than a member or a beneficiary because ERISA by its nature restricts the nature of remedies that are available. But there's a critical distinction between our position and the position that a plan member is in. It's true that a plan member may have limited remedies. For example, they're not entitled to seek punitive damages, but they are given a remedy. The difference here is that under Great West, we are not given a remedy in ERISA, and that makes all the difference in the world. What you have here, given the results in the two district court opinions, is a situation where there are two parties to a contract, only one of whom is allowed to have access to any court in the country in order to enforce their contract. Can I stop you there just a second? When there's an ERISA plan, the plan provides certain benefits for the participants in this benefits. In this case, the benefit was receiving an insurance policy. That's correct. Which is a separate contract. That's correct. It's a product of the plan, but it's only a separate contract. So you're saying we have contractual rights that are separate from the plan, and under our case holdings and what the plan provides, it doesn't provide for breach of contract between these two parties. Is that your best case? That's my best case. And that's why it would be the second thing that I would turn to. That's why this claim does not relate to the plan as this court and the Supreme Court has interpreted that term. What the court … Well, that goes back to remedies. You don't have a remedy. If, for some reason, you're a plan participant, you're insured, and the company get into a contract dispute and you don't have a remedy or even a place to go to, then it can't be within the plan. Is that what you're saying? That's correct. Okay. And if you look at ERISA, you know, as this court and the Supreme Court have said you're supposed to, to try to apply the preemption in a way that is consistent with the purposes of it, ERISA's purpose is to regulate not the substance of the benefits that are provided, but the manner in which those benefits are administered. Plan administration is the heart and soul of ERISA. And as you point out, the plan can decide to provide a certain array of benefits. ERISA doesn't regulate what goes into a plan's benefit structure, and they can do it either by self-insuring or by purchasing insurance. But ERISA draws a very clear line between that which it regulates, which is plan administration, and that which it doesn't, which is the business of insurance. The business of insurance, at least since the enactment of the McCarran-Ferguson Act, has always been uniquely a matter of state regulation, and ERISA preserves that unique area of state regulation by creating a savings clause. So even if you were to conclude, I think incorrectly. State regulation of insurance in this case is pretty foundation. It's a contract action between the insurer and the insured. So the state doesn't have to get involved to regulate that dispute. Judge, I would agree that you don't have to find that there is insurance regulation in order for us to prevail because they don't get over the initial threshold of bringing us within the field of preemption. However, if you were to conclude, if you adopted counsel's argument that relate to means everything is related to everything else, then you would still, I think, have to conclude that it falls within the savings clause because while this is a matter of private contract between the McDowells and Providence, that contract is directly regulated by the state insurance code, and the state insurance code specifically allows the contract to include a reimbursement provision, such as the one that we're dealing with here. The Supreme Court has held that a state statute that precludes an insurance contract from including an indemnity provision is not preempted because of the insurance savings clause. It has to follow a fortiori that a state making the contrary policy choice and saying we're going to permit reimbursement also has to be not preempted. And I think at that point ‑‑ It seems to me that writing the policy, in other words, Carrier takes the policy to the insurance commissioner and says we want this approved. It has this provision in it that we're talking about. There's a difference between that as regulation of insurance and saying that the state is regulating insurance when there becomes a dispute as to the application of that provision. That's not regulating insurance. That's already been done. Well, I would ‑‑ Your Honor, I think that the question is whether the particular claim is ‑‑ arises under an insurance regulation. Our position is that the fact that the contract was reviewed and approved by the insurance commissioner brings the contract within the insurance regulation. Moreover, in this particular case, there's a specific statute that expressly authorizes that provision. But I believe, as I've indicated in response to Judge Brunetti's question, that you're not going to get to the insurance savings clause. That's not your strongest argument. Or you don't even have to get there if you went on what relates to the plan or the remedy provision. That's correct, Your Honor. I've fused up your time, but we'll restore a minute or two. Thank you. I appreciate it. Your Honor, I'd like to introduce my clients, Rose and Gary McDowell. They're here with us. And I'd like to start off with a little apology. First of all, the order allowing us to reply brief came in as I was returning from vacation, and we were under the impression that at the time of filing the motion we'd actually filed the reply brief. We have received it. Okay. And I assume you had the motions, and I apologize. We also responded to the supplemental authority and cited Elliott. I hope the Court got that. That is correct. Okay. Your best argument that the district judge was correct in dismissing McDowell won. Because IHRSA preempts the field. Excuse me? Metropolitan v. Taylor. It preempts the field. Any claim brought by anyone. That's a nice concept, but how does it preempt and what's your lead? I mean, why does it preempt it? Show me how this contract is preempted and the insurer is preempted. First of all, there's no dispute that this contract is governed by IHRSA. It's an IHRSA contract. It actually is between, of course, the insurance company and the employer for the benefit of my clients. You're saying there's absolute preemption with everything to do with that contract. There's nothing excluded. No matter what happens with the contract, as a contract matter, and give me the authority again for that. I believe Metropolitan v. Taylor is the authority and is still good law. What that really means as a practical matter is that one party can refuse to meet its contract obligations with impunity. I mean, this is one example, but I can think of others. Let's say somebody doesn't pay their premiums and the insurance company decides to continue along but sues for the premiums that have been unpaid. Oh, you can't do that. This is an IHRSA contract. But that's a different section, Your Honor. That's a different section. A-1 would certainly allow the insurance company to sue the employer for premiums. We're talking about here a suit by the fiduciary against the participant. That's covered under A-3. Only equitable remedies are allowed. Well, but if your theories are correct, no equitable remedies are allowed either, because that's what A-2 is about. Congress apparently in its wisdom has decided for whatever reason that you cannot that the insurance companies are not allowed to go to court and impose personal liability judgments on insurance. So even though the contract requires them to pay reimbursement, they can simply choose not to and walk away from it. So how is that supporting any of the purposes of ERISA if there's essentially a unilateral right to rewrite the terms of the insurance contract? Well, let me first start off by saying, of course, that my clients never agreed to reimburse anybody. They were provided with a benefit that had certain requirements in it, that had certain preconditions to their receiving the benefits. For example, you can't just go to the neighborhood quack and have that reimbursed. It has to be a doctor. I mean, there are a lot of conditions for the provision of this benefit, and one of those provisions is reimbursement in certain circumstances. Your Honor, I don't believe that's a condition precedent. The condition precedent, of course, is that the premium which my clients paid be received by the insurance company, and they're required to provide those benefits. Right. But what benefits are they required to provide? That's the point. The quid pro quo for the amount of premium is a certain policy, which is a lawful policy in the State of Oregon, that provides a certain list of benefits and not others, and has certain requirements of them and others. But my point remains the same. Regardless of which provision you're looking at, it seems to me that if you're right, Congress has given carte blanche for one side not to live up to its agreements, and nobody could do anything about it. Well, Your Honor, that's not necessarily the case. They continue to say that they can't do anything about it. Certainly they have the right to subrogate. They could have undertaken to hire a lawyer to go to the trouble to prove liability against Mr. Peterson and statewide. They have the right to go after a third-party tortfeasor. They could have done that. But, no, they write our coattails. And they ask us to reimburse them. But their contract says they can't. Well, their contract may say that, Your Honor. And I would again ask you to remember that my clients never agreed to that. They never agreed. The employer negotiated or bought the policy, Your Honor. They didn't take any benefits under the policy? Certainly they took benefits. But that doesn't necessarily mean as a third-party beneficiary they can be required to do something that they haven't agreed to. But that's a matter of state law. In other words, it wasn't in a vacuum. In other words, they didn't just show up on the doorstep and they say, My, that was nice. Where did that come from? They knew the policy was in existence. Theoretically, they knew the provisions of the policy. And they knew that it worked both ways. If they take the benefits, they take the obligations. Your Honor, I actually don't agree with that as a matter of state law. I don't think a third-party beneficiary can be obligated affirmatively to do something which is not a condition precedent here. But I want to go back to the point that I'm raising. This Court on four different occasions, in Cement Masons, Owens, and Avco, and one other case, has already held on these facts under these circumstances that the insurance company can't get reimbursement. Now, there may be other means that they can do that by. As the Court in Great West said, one of which would have been for them to hire their own lawyer and seek to recover from the third party. But if they have a right to reimbursement, it's got to be under ERISA. And they don't. And I think Elliott reaffirms that. And I would like to read, if I could, what Elliott referred to the Rush case, and specifically the Rush case says, although we have yet to encounter a federal choice, this is on page 32 of my brief, between congressional policies of exclusively federal remedies and the reservation of business of insurance to the states, Metropolitan Life, U.S. at 744, note 21, we have anticipated such a conflict with a state insurance regulation losing out that allows planned participants to obtain other remedies Congress rejected in ERISA. Now, of course, my position has been in terms of the reliance by the insurance company on ORS 742, 534, 536, 538, that that was never raised below, and it was not preserved on appeal. But the point here still is that in the event of a conflict, whether it's a state common law claim for breach of contract or under a statute, ERISA governs the only way that the fiduciary can bring an action against a participant, which is one of the relationships governed, as the Ninth Circuit has said, what you have to focus on, as Bast said, is does it apply to the relationship. I mean, is the relationship one of ERISA, controlled by ERISA. Clearly, the relationship between a fiduciary, such as Providence, and a planned participant is a relationship governed by ERISA. So if they have a right to recover, it is only under ERISA. And four other panels of this Court have said, under the same facts, that there's no right to impose a legal money judgment against a planned participant or beneficiary for reimbursement. That's a decision of four courts. Again, Elliott recently decided in August. I'd have to go back and review. Do those facts also tie into the fact that the contract between the insured and the insurer provided for the reimbursement? I believe that they did, Your Honor. Because that's sort of key here. I've been surprised by the Supreme Court on some of our ERISA decisions, because when they want to, they shift gears. But I haven't seen – I'll just have to check those facts, because – well, they're obviously different panels. But the fact of the matter, I believe in those particular cases, if not in all four, at least in one or more, the insurance company brought an action to seek reimbursement, just as they've done here, for breach of contract, for breach of the plan. I'm focusing on – my mind is a little scattered this morning. I'm trying to remember those cases. But what I'm focusing on is the narrow issue. If the insurance contract that comes out of the ERISA plan has a specific provision where the insured and the insurer have certain responsibilities, in this case the insured having to reimburse on these recoveries, then I understand your argument, if you have massive preemption, that we're not going to do this. I'm just wondering if that specific contract provision is covered by prior law and whether the Supreme Court has addressed that specific type of reimbursement, because general reimbursement – I just have a little confusion in that area. Well, certainly I just want to make sure that we're clear on this one point, and that is that I think the ABCO principle, which of course was decided in the Section 301 case, does apply, Metro versus Taylor. I believe there is complete preemption. The judge, Judge Yelbrich, was absolutely right in saying that the case is preempted completely and must be in federal court, must be under ERISA. That's the correct principle. Now, having said that, Your Honor, there are a number of cases that we have cited in our briefs where, in fact, and there are cases on both sides. Some are by fiduciaries against planned participants. Some are planned participants against fiduciaries. But I don't think it makes a difference, because what this Court has said, and I believe is what is understood from the Supreme Court, is that the question is, is the relationship one governed by ERISA? And clearly, a fiduciary like Providence and our clients are the relationship governed by ERISA. That means it's completely preempted. It comes in ERISA. Now, again, I would like to emphasize that there were other remedies available perhaps to these, just like Great West said, that they could have gone after someone else, but they can't go after us no matter what their contract says. And these other cases that we've cited from this circuit so hold. It's just not enforceable. They don't have a right to oppose a legal judgment. Now, one point I wanted to make that I think you raised, and it's now leaving my head, but, well. Counsel, while you're thinking about that, what is your view, if you have developed one, on the potential relevance of the cases that the Supreme Court has recently granted cert in? I don't know. I don't know. It sounds like, again, there are claims by planned participants against fiduciary. I think the principles apply in terms of the relationships the same, so it could very well. But I don't know whether it's going to come out in this particular instance to be, if they say anything. I would like to go back to Great West, though, and say in terms of the gap that counsel says exists, I don't think it does. And in response to Judge Brunetti, I want to make sure that he understands that in Great West, as well as in the Cement Mason case and others, remember that Great West was suing to enforce a provision in the policy for reimbursement. They were suing to enforce. They sought specific performance to enforce it because they knew, based on other decisions of the Ninth Circuit. Remember, this came from the Ninth Circuit. Great West came from the Ninth Circuit. They knew that other decisions of the Ninth Circuit, that they couldn't bring a breach of contract case in either state court or federal court because of Cement Masons and the other case. They couldn't do that. So to avoid that, Great West tried to characterize the action as an action for specific performance, and the Supreme Court said no. Maybe this will help me a little bit. If a policy provides for certain benefits, injury, sickness, whatever, you get benefits, and the insurance company refuses to pay a claim, whether you characterize it reimbursement, breach of contract, whatever, what's the remedy for the planned participant? Under A-1, they sue for the benefit. They have the right to bring a legal claim, a claim at law for the benefit. But the fiduciary does not have a right to bring a claim at law for money damages against the participant. Because there's no provision in ERISA for that. That's correct. So you're saying if I slip out a contract action and then place it on the side here, I've now created this unpermissible, whether you call it reimbursement, which has been decided, or whether you call it a contract breach, it's not permissible because you're seeking money damages. That's right. It's an alternate enforcement mechanism for money damages. And if you look at pages 1146 and 1147 of Elliott, there's a specific quote, and I'm running out of time, but I would like to say that basically if you look at 1146 and 1147 of Elliott, it says that, in other words, the first issue, the 1132 preemption issue, effect depends on the nature of the State remedy, including the availability of non-ERISA compensatory and punitive damages. The availability of such non-ERISA damages is a strong indicator that the State's cause of action is preempted. They are not entitled to money damages. If they want State relief, they should get involved in the original lawsuit. They should get involved in the original lawsuit. They should go after the third party. They could have filed the lien, supposedly. I mean, this was not preserved on appeal, in my opinion. No, I understand. That has been speculated. Well, if, and I don't know that 742.520et sec applies because it really was an out-of-State insurance policy, but if it does, certainly, and even if it doesn't, there are State common law, subrogation rights, and there certainly they could intervene. They could always intervene. And there is a lien right. 536 appears to give them a lien right. They could have asserted a lien against the proceeds, against the other insurance company. But they cannot go after my clients for a legal money judgment. And if that's, if that's, I'm not here to apologize for Congress. If they want to change that, they need to go to Congress. That's a good full-time job, I think. Thank you, Your Honor. Thank you, counsel. We'll give you two minutes for rebuttal since we've asked quite a few questions, there. Thank you very much. I think I have about three quick points. First of all, counsel said that this Court has previously decided this question in Cement, Masons, and Owens, and that the Supreme Court decided it in Great West. He's just wrong. All of those cases were ERISA claims brought by the insurer under ERISA. And those cases stand for the proposition that there is no remedy under ERISA. In the Owens case, this Court said if you want to have a breach of contract action, you've got to go to state court. In Great West, the majority said we're not deciding whether there is a state claim. And the dissent certainly assumed that the net result of the Court's decision was to send us to state court. Secondly, counsel said that, in answer to Judge Graber's question, that the insurance company could sue the member for premiums pursuant to 1132 sub a sub 1. He's wrong on that as well. 1132 sub a sub 1 provides remedies only for participants and beneficiaries. There's some other express permission to sue for premiums in ERISA? No, there is not. Counsel says it's not true that there is an inadequate remedy. They could subrogate and go into court and sue the third-party tort fees. Several comments about that. First of all, that's not a remedy against the party who breached their contract to reimburse. Secondly, that's not what the Court said in Judge Gelderk's case. Judge Gelderk said we had no remedy. And he said that because that's what counsel told him the result should be. And if you think about it, our ability to subrogate depends upon our ability to assert our contract right under the contract with respect to the defendants in this case. That's a question of timing. At the point at which Judge Gelderk's was looking at it, you may not have had a remedy. Subrogation probably died with the final judgment in the basic action. I don't think, Your Honor, that we can subrogate if we don't have the right to assert a claim against the third party. And in any case, the contract clause that we're talking about is not a subrogation clause. It's a reimbursement clause. Apparently what would happen, if I understand this correct, let's suppose it's all the state court and we're all mumbling up with the state actions and the insured and the injured and all that stuff, they could remove it then and make the same argument, right? That's correct. So we're always going to come back here, because whether they try to subrogate below or whatever, if a preemption applies, a preemption applies anywhere, anytime. That's exactly true. And counsel's position in this case all the way through until McDowell II was filed was not that we had some other remedy available to us, but that Congress did not give us a remedy in ERISA and they took away any State remedies that we had. In other words, we're writing for the first time on these unique situations? Your Honor, I believe – I know that this is a question of first impression in the circuit, at least at the circuit level. And I believe that these are questions of first impression. I don't know – I'm not aware of any reported decision in any circuit that addresses this particular question. I think implied in your opponent's argument was that you don't really need this right that you're seeking here, because the insurance contract itself gives you the right of subrogation and the right to require the beneficiaries to put the money in trust that they get from you or that they recover from the bad guy. So you don't need this. All you have to use is your contractual remedy under the insurance policy. Well, we do have – we may have multiple remedies under the insurance policy, but that's sort of beside the point as to whether we have a remedy with respect to our right to reimbursement. Counsel, by the way – Part of your argument, though, is one of necessity. In other words, if you can't recover in this action, these people get a windfall. And I can see the validity of that argument, except that you could have been there before and it wouldn't be a windfall. You'd already have your money. But as Judge Brunetti pointed out, had we been there before, counsel would have been saying that our right of subrogation is preempted for the same exact reasons that he argues that our right of reimbursement is preempted. Then you go under the trust provisions of the policy and say, okay, we're not going to pay you a nickel until you agree to put the money we give you in trust when you recover it from the dead guy. Actually, the facts in this case, which you have to take from the complaint, notwithstanding counsel's desire to dispute that, also alleges that the plaintiffs and their attorneys signed a trust agreement before the recovery in this case and then refused to honor it as well. And so, you know, I think that on the complaint, which you must take those facts as true, the insurer in this case did everything that they could possibly do to protect their interest and were left without a remedy because that's what Judge Jeldrich said the result should be. And I want to point out, Judge Jeldrich didn't say that's what Congress intended. In fact, if you look at the transcript of oral argument, Judge Jeldrich said he'd bet a year's salary that Congress didn't intend that, but he said Congress made a mistake. It's ironic, it seems to me, in the context of preemption to say Congress made a mistake and took away a remedy when I can cite you 50 cases dealing with preemption where the courts have said we do not lightly presume that Congress intended to take away the power of the States to regulate traditional areas that are subject to State regulation. Yet that's what the Court concluded happened in this case. Thank you, counsel. Thank you. We appreciate the arguments of both parties. They've been very helpful. And the case just argued is submitted, and we will stand adjourned for this calendar. All rise. This part of the session stands adjourned.
judges: Brunetti, Tg Nelson, Graber